IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AMATI ENVIRONMENTAL ENTERPRISES, INC., | ) ) | |
| Plaintiff | ) ) | Civil Action No. 08-780 |
| vs. | ) ) | Judge Donetta W. Ambrose/ Magistrate Judge Amy Reynolds Hay |
| WESTCHESTER FIRE INSURANCE COMPANY, | ) ) | |
| Defendant | ) | |

## **OPINION**

HAY, Magistrate Judge

In the second phase[1] of this diversity matter, the Court Considers a Motion (Doc. 8) made by the Defendant, Westchester Fire Insurance Co., to transfer this action to the District Court for the Eastern District of New York, pursuant to the provisions of 28 U.S.C. § 1404(a) [2]. Having

---

[1] In a Report and Recommendation (Doc. 13) filed November 26, 2008, and adopted by the District Court on January 5, 2009 (Doc. 15), the Court considered Westchester's Motion, made pursuant to Fed. R. 12(b)(6) to dismiss this matter based on a forum selection clause that Westchester contended limited litigation in this case to New York state court. The Court rejected this argument. It also rejected Westchester's contentions that venue was improper in the Western District of Pennsylvania, and that dismissal pursuant to Fed. R. Civ. P. 12(b)(6) was appropriate under the terms of 28 U.S.C. § 1406(a). The Court addresses Westchester's Motion to Transfer in this separate Opinion and Order.

Because motions to transfer, unlike motions to dismiss, are not listed as dispositive in Local Rule 71.1.4, a Magistrate Judge may rule on such motions pursuant to 28 U.S.C. § 636(b)(1)(A). See, e.g. Silong v. U.S., 5:05-CV-55-OC-10GRJ, 2006 WL 948048, at *1 n.1 (M.D. Fla. April 12, 2006). This is true "because [the ruling] can only result in the transfer of a case to another federal district, not in a decision on the merits or even a determination of federal jurisdiction." Adams v. Key Tronic Corp., No. 94 Civ. AO535, 1997 WL 1864, at *1 (S.D.N.Y. Jan. 2, 1997) (collecting cases). Where an appeal is taken from a magistrate judge's ruling on a nondispositive motion the "clearly erroneous or contrary to law" standard of review applies. See 28 U.S.C. s. 636(b)(1)(A) (stating standard of review for nondispositive matters); Fed. R. Civ, P. 72(a) (same); Local Rule 72.1.3(B)(same).

[2] According to this section: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

engaged in the weighing process mandated by the Court of Appeals for the Third Circuit in cases where transfer pursuant to Section 1441(a) is requested, the Court finds that this case should be transferred to the United States District Court for the Eastern District of New York.

## I. BACKGROUND

This factual summary is identical to that recounted in the Report and Recommendation. In its Complaint (Doc.1), the Plaintiff, Amati Environmental Enterprises, Inc. ("Amati"), a Pennsylvania company engaged in the business of construction and waste management, (see Doc. 12 at 3), claims that it is owed money pursuant to the terms of a bond issued by Westchester Fire Insurance Co. ("Westchester"), a large New York corporation which issues surety bonds and regularly conducts business in many states, including Pennsylvania. (Id.).

Amati's claim grows out of a September 2005 contract made between North American Demolition Corp. ("North American") and Tri-State Ship Repair & Dry Dock Co. ("Tri-State") for removal and disposal of a sunken dry dock, ("the job"), located in Staten Island, New York. (Doc.1 at ¶ 6). Westchester, as surety for North American, issued a bond ("the bond") in connection with the job, which obligated Westchester to pay claimants "for labor, materials and equipment furnished for use on or performance of the Job" in the event that North American failed to make payment. (Id. Ex. A).

In March 2006, North American entered into an oral contract with Amati, whereby Amati agreed to serve as the job's construction manager in return for $100,000, plus out-of-pocket costs for labor, material, and equipment. Amati contends that although it performed the required work, North American failed to pay $234,101.09 of the total amount owed. Relying on the bond, Amati filed this action seeking payment from Westchester. (Id. at ¶¶ 10-14). Westchester filed Motions to Dismiss which were denied when the District Court adopted the Report and

2

Recommendation of the Magistrate Judge.  (Doc. 13 , Doc.15 ).  In the alternative, Westchester asked that this case be transferred to the District Court for the Eastern District of New York in accordance with the terms of a forum selection clause made part of the bond, and the applicable provisions of 28 U.S.C. § 1404(a).  The Court now addresses the propriety of the requested transfer.

## THE GOVERNING ANALYTICAL FRAMEWORK

In order for Section 1404(a) to apply at all, venue must be proper in the both the original and requested venues.  Jumara v. State Farm Insurance Co., 55 F.3d 873, 878 (3d Cir. 1995).  In its Report and Recommendation, this Court determined that venue is proper in the Western District of Pennsylvania under 28 U.S.C. §1331(a)(1).  The propriety of venue in the Eastern District of New York is uncontested.[3]

In Jumara, which also involved a forum selection clause, the Court of Appeals set clear guidelines for courts faced with transfer requests made in diversity matters made pursuant to 28 U.S.C. §1404(a).  As a preliminary matter, the Court observed that "the effect to be given a contractual forum selection clause in diversity cases is determined by federal not state law."  Id. at 877.  The Court explained: "Because "[q]uestions of venue and the enforcement of forum selection clauses are essentially procedural, rather than substantive in nature," federal law applies in diversity cases.  Jumara, 55 F.3d at 877 (citations omitted).  The Court  then referenced the Supreme Court's decision  in Stewart Org., Inc. v. Ricoh, 487 U.S. 22 (1988), mandating that district courts considering transfer under Section 1404(a) "engage in a case-specific balancing

---

[3] The facts satisfy the requirement of 28 U.S.C. §1391(a)(2) in that the Eastern District of New York is clearly "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated."  Id.

3

process . . . to determine whether to give the clause effect by transferring the case to another district court embracing the contractually specified forum." Jumara, 55 F.3d at 878.

The Court in Jumara then delineated the public and private considerations to be balanced by a court evaluating a request for transfer of venue. Id. at 879. The relevant private interests include: 1) the plaintiff's choice of forum; 2) the defendant's choice of forum; 3) where the claim arose; 4) the convenience of the parties as indicated by their relative physical and financial conditions; 5) the convenience of the witnesses, but only to the extent that they may actually be unavailable for trial; and 6) the location of books and records, but again only insofar as they cannot be produced in the alternative forum. Id. In general, a plaintiff's choice of forum is the paramount consideration in deciding whether transfer of venue is warranted. The decision to grant a motion for transfer lies within the broad discretion of the court, but is not to be liberally granted. Shutte v. ARMCO Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970).

In cases where a forum selection clause is involved, the analysis of private interests is altered. "Within [the Jumara] framework, a forum selection clause is treated as a manifestation of the parties' preferences as to a convenient forum." Jumara, 55 F.3d at 880. The parties' preference as expressed in such a clause is not dispositive, but is "entitled to substantial consideration." Id. (internal citations omitted). The degree of deference normally accorded to a plaintiff's choice is inappropriate where the plaintiff has already freely contractually chosen an appropriate venue.[4] Where the forum selection clause is valid - meaning that there has been no

---

[4] Amati does not rest any part of its forum selection analysis on the fact that it was not party to the terms of the bond. Even had it been raised, this argument would not have affected the Court's analysis. "The short answer to this contention is that one who seeks to enforce a contract as a third party beneficiary is bound by the terms and conditions of the agreement and has no greater rights than those of the contracting party through which it claims." Process and Storage Vessels, Inc. v. Tank Service, Inc., 541 F. Supp. 725 , 733 ( D. Del. 1982)(citations omitted). See also Vangura Kitchen Tops v. C&C N. America,

4

fraud, influence, or overweening bargaining power -  the plaintiffs bear the burden of demonstrating why they should not be bound by their contractual choice of forum." See id. (internal citations omitted).

The decision in Jumara also requires that a transfer request be evaluated against important public interests which include: 1) the enforceability of the judgment; 2) practical considerations that could make the trial easy, expeditious, or inexpensive; 3) a locale's interest in deciding local controversies; 4) the public policies of the fora; and 5) the Court's familiarity with applicable state law. Id. at 879-80.

Before the Court can begin the balancing process described in Jumara, it must assess the validity of the forum selection clause.

### Should the Forum Selection Clause be Considered in the Section 1404(a) Balancing?

Amati does not allege that the bond's forum selection clause is invalid. It argues instead that the language of the bond itself establishes that venue is appropriate in the Western District of Pennsylvania. Amati bases this argument on the clause's directive that an action on the bond be brought in "a court of competent jurisdiction in the location in which the work or part of the work is located."  (Doc.12  Ex. A at 5). According to Amati, although the actual construction project and the related physical work took place in New York, part of Amati's work as construction manager was performed in Pennsylvania, giving Amati the right, under the clause,  to litigate in

---

Inc., No. 08-cv-1011, 2008 WL 4540186 at * 5 (W.D. Pa. Oct. 7, 2008) (citing Coastal Steel Corp. v. Tilghman Wheelabrator Ltd., 709 F.2d 190, 202-04 (3d Cir.1983), overruled on other grounds by Lauro Lines S.R.L. v. Chasser, 490 U.S. 495 (1989) (holding that forum selection clause may be enforced against intended third party beneficiary to contract containing this clause, consistent with the common law of contracts.)

its home forum. The "work" to which Amati refers is administrative - planning, designing, preparing, hiring, securing materials, equipment, and submittals, and coordinating the work of project participants. (Doc. 12 at 11).

Westchester insists that the "work" referenced in the forum selection clause is limited to that performed at the Staten Island site. "The Payment Bond provides that it was issued solely to pay for labor, materials and equipment furnished for use in the performance of the construction contract defined in the Payment Bond. Complaint, Exhibit A, p.2 ¶ 1." The bond, in turn, specifies that the contract covers "removal and disposal of sunken dry dock, Staten Island, NY." (Doc. 9 at 5).

Amati does not cite, and the Court has not found authority defining the term"work" broadly enough to mean a general contractor's administrative tasks alone, especially when there is no allegation that these tasks have been performed in a jurisdiction having any connection whatever to the construction.[5] To construe the terms as Amati asks would effectively eviscerate the forum selection clause, eliminating the predictability sought by Westchester when it included the clause in the bond. In fact, under the reading of the clause proposed by Amati, it is difficult to imagine a situation in which a claimant under the bond could not argue that some administrative act, arguably related to the contract, was carried out in its home district, thereby exposing Westchester to litigation in a jurisdiction that could not have been within its contemplation at the

---

[5]Amati misrepresents the holding in <u>Superior Precast</u>, 71 F. Supp. 2d at 447, which did not involve a forum selection clause. Moreover, the court in that case did *not* conclude that administrative "work" of the type performed by Amati was sufficient to support a presumption in favor of the plaintiff's forum. In support of its conclusion that venue was proper in the Eastern District of Pennsylvania under the Section 1404(a) balancing test, the court instead pointed to the fact that sound walls to be incorporated in a highway project in western Pennsylvania had been fabricated in and shipped from eastern Pennsylvania, and that a series of settlement negotiations regarding the underlying contract dispute took place in eastern Pennsylvania.

time the bond was issued.

The same is not true for Amati. Before Amati agreed with North American, a New York corporation, to serve as general contractor for the job, which was located in New York, it would have had the opportunity to review both the underlying contract between North American and Tri-State, and the bond issued by Westchester on behalf of North American. Based on these documents, the physical location of the dry dock, and the nature of the general contractor's job, Amati had every reason to expect that: 1) the primary focus of its work as general contractor would be in New York; 2) the language of the bond would be interpreted to require that any claim be filed in New York; and 3) if things did not go smoothly with respect to any aspect of the job, Amati would likely be required to litigate in New York.

The Court rejects Amati's argument that venue in this district is supported by the terms of the forum selection clause, and turns to the validity of the clause itself. It is clear that parties may agree to confine contract litigation to a single jurisdiction. M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1 (1972). The Court of Appeals for the Third Circuit has stated that absent extenuating circumstances, the validity of a forum selection clause is presumed, with the burden on the plaintiff to show why the clause should not be enforced. Jumara, 55 F.3d at 880. Amati has failed to satisfy this burden.

In order to avoid a valid forum selection clause, a Plaintiff must establish that the clause was fraudulently obtained, that enforcement would violate public policy, or that the Plaintiff would be deprived of its day in court should the clause be enforced. Coastal Steel Corp., 709 F.2d at 202. Amati does not allege any of these irregularities. Consequently, the Court thus finds that the clause constitutes one of the elements to be weighed in deciding whether Westchester's Motion to Transfer should be granted.

## APPLICATION OF THE BALANCING TEST TO THE FACTS OF THIS CASE

The first two factors relevant in the Section 1404(a) analysis are the parties' chosen fora. The weight typically accorded the Plaintiff's choice of forum is diminished by Westchester's interest in enforcing a valid forum selection clause, and the fact that Amati had the opportunity to assess the risk and inconvenience associated with potential litigation in New York before it agreed to serve as the general contractor.

Amati argues that the convenience of the parties strongly favors denial of Westchester's Motion to Transfer, in that the Plaintiff is a two person company with limited resources and all of its witnesses located in western Pennsylvania. The only potential witness identified is Ronald Amati, the Defendant's President, who states in his affidavit that if he is required to attend trial in New York, "Amati could not conduct business because [he] would be unable to visit the office to perform [his] daily responsibilities . . . ." (Doc. 12 Ex.C at 3).

Westchester counters that all remaining witnesses - and virtually everything to do with this case - are located in or near the Eastern District of New York, outside the subpoena power of this Court. It does not, however, identify these witnesses, state that they are unwilling or unable to attend trial here, or explain why their testimony could not be secured via videotape.

Both parties cite the location of records in support of their arguments with respect to transfer, although neither alleges that these records are voluminous or difficult to produce in either forum. Westchester does, however, note that many more relevant records - including those maintained by vendors with whom Amati dealt - are located in the Eastern District of New York or the immediate vicinity.

The public factors to be considered in the Section 1404(a) analysis are largely in equipoise. Difficulties in obtaining enforcement of any ultimate judgment, local interests,

significant public policy concerns, and the court's ability to determine and apply relevant law do nor favor either forum. Practical considerations that could make the trial easy, expeditious, or inexpensive, are also balanced. While court congestion is a negative factor in New York, the convenience and expense of the parties and their witnesses - with the exception of the Plaintiff, of course - weighs, to some extent, in favor trial in that venue.

Having considered the totality of the factors bearing on the venue of this case, the Court is persuaded that the Defendant's Motion to Transfer should be granted. As the Court has discussed, Amati has failed to undermine the validity of the bond's forum selection clause. Consequently, its opposition to the Motion to Transfer rests on its convenience alone. In the estimation of the Court, the impact of that factor, while important, is overstated, and certainly does not amount to a showing that trial in the Eastern District of New York will be "so gravely difficult and inconvenient that [Amati] will be deprived of [his] day in court." Foster v. Chesapeake Ins. Co., 933 F.2d 1207, 1219 (3d Cir. 1991). The Defendant asserts in the affidavit accompanying its Motion that Ronald Amati traveled to New York on multiple occasions in connection with Amati's position as general contractor. Amati does not contest this assertion. Indeed, it is difficult to imagine how Amati's duties could have been performed without multiple on-site visits. Despite Ronald Amati's time out of the office, the business continued to function. In view of that fact, especially in this age of portable computers, fax machines, and mobile phones, it is difficult to credit Amati's contention that its business would come to a halt during the trial of what has every indication of being a straightforward contract dispute.

While the Plaintiff's choice of forum is typically difficult to overcome, the Court, in the exercise of its discretion, finds that the forum selection clause, and, to a lesser extent, the other factors relevant under Jumara, render this case atypical. The Court has taken the totality of these

9

factors into account, and finds that they weigh decidedly in favor of the Defendant. The Motion to Transfer will be granted. An appropriate Order follows.

/s/ *Amy Reynolds Hay*
United States Magistrate Judge

Dated: 8 January, 2009


cc: Counsel of Record via CM-ECF